UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIELLE H.,

               Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

CASE NO. C24-5006-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

      Plaintiff appeals the denial of her application for Disability Insurance Benefits. She contends the ALJ erred by (1) failing to provide clear and convincing reasons for discounting plaintiff's testimony; (2) improperly discounting the opinions of examining psychologists Dr. Philip V. Gibson, Ph.D., and Dr. Terilee Wingate, Ph.D.; and (3) failing to provide germane reasons for rejecting the lay testimony. Dkt. 7. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

      Plaintiff is currently 55 years old, has a bachelor's degree, and has worked as a hand packager. Tr. 95, 101, 106. In August 2020, she applied for benefits, alleging disability as of January 23, 2020. Tr. 102. Her application was denied initially and on reconsideration. Tr. 100–20. The ALJ conducted a February 2023 hearing and issued an April 2023 decision. Tr. 17–36,

41–99. The ALJ found that plaintiff met the insured status requirements through September 30, 2025, and had not engaged in substantial gainful activity since the alleged onset date in January 2020. Tr. 19. The ALJ found that plaintiff has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); major depressive disorder; generalized anxiety disorder; and neurocognitive disorder, status post traumatic brain injury. Tr. 20. After determining that plaintiff did not have an impairment that met or equaled a listed impairment, the ALJ assessed that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with following non-exertional limitations: understand, remember, and apply detailed, not complex, instructions; perform predictable tasks; not in a fast-paced production environment; exposure to occasional workplace changes; occasional interaction with the general public. Tr. 26. Although determining that plaintiff could not return to her past relevant work as a hand packager, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 35. The ALJ therefore found plaintiff to be not disabled. Tr. 36. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–6.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

1    Plaintiff contends that the ALJ harmfully erred by improperly discounting (1) plaintiff's

2    testimony; (2) the opinions of psychologists Dr. Gibson and Dr. Wingate; and (3) the lay

3    testimony of plaintiff's friend/landlord Jan Smith. The Court finds that plaintiff has failed to

4    demonstrate that the ALJ's decision was unsupported by substantial evidence or marred by the

5    misapplication of the law.

6    **1. Plaintiff's Testimony**

7    Plaintiff contends that the ALJ failed to state specific, clear, and convincing reasons for

8    discounting her symptom testimony about non-exertional limitations that became disabling after

9    her January 2019 hospitalization due to a motor vehicle accident. *See Lambert v. Saul*, 980 F.2d

10   1266, 1277 (9th Cir. 2020). The Court finds that plaintiff has not demonstrated that the ALJ

11   harmfully erred as a matter of fact or law in evaluating her testimony.

12   The ALJ discounted plaintiff's testimony about the intensity, persistence, and limiting

13   effects of her non-exertional symptoms because it was not entirely consistent with, and was

14   unsupported by, the medical evidence, stability and relief with treatment, and activities of daily

15   living. Tr. 27–32. First, the ALJ referred to medical evidence that suggested that plaintiff's

16   symptoms were not as limiting as alleged: mental status examinations that showed her

17   concentration, persistence, and pace to be within normal limits; average to low-average

18   intelligence; good remote and recent memory, normal concentration and attention, and strong

19   scores on mini mental status examinations; medical notes showing full orientation and exhibiting

20   coherent, logical, and goal directed thinking; and persisting symptoms around procrastination,

21   follow-through, and organization that predated her traumatic brain injury. Tr. 27–32; *see, e.g.*,

22   Tr. 298–99, 644, 713, 778, 789. Second, the ALJ noted that plaintiff's symptoms showed

23   stability and improvement with treatment, medication, and speech therapy. Tr. 28, 32; *see, e.g.*,

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 3

1   Tr. 643, 647, 902, 928, 931, 947. Third, the ALJ noted that plaintiff engaged in activities of daily

2   living that undermined the degree of severity of her alleged symptoms. Tr. 30, 32. Such activities

3   included doing homework, being on social media, watching videos, interacting with roommates,

4   enrolling and receiving good grades in a one-year, fulltime program at Green River Community

5   College for fingerprint technology, and working part-time at Amazon during the months after the

6   January 2019 motor vehicle accident and before the January 2020 alleged onset date of

7   disability. *See* Tr. 30, *see, e.g.*, Tr. 55–62, 890, 892, 894. The ALJ's stated reasons for

8   discounting plaintiff's testimony about the severity of her non-exertional limitations were

9   specific, clear, and convincing. *See* 20 C.F.R. § 1529(c)(2) ("Objective medical evidence . . . is a

10   useful indicator to assist us in making reasonable conclusions about the intensity and persistence

11   of your symptoms and the effect those symptoms, such as pain, may have on your ability to

12   work."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (noting that evidence of

13   medical treatment relieving symptoms can undermine a claim of disability even where the

14   symptoms "wax and wane"); *Molina*, 674 F.3d at 1112–13 (noting that an ALJ may discount the

15   claimant's statements if they conflict with her activities even where those activities suggest some

16   difficulty in functioning).

17        Plaintiff argues that the same evidence the ALJ cited for discounting her testimony

18   reasonably supports her testimony about the severity of her symptoms. Although plaintiff's

19   position is well-stated, this does not undermine the ALJ's reasonable interpretation of the

20   evidence supporting a contrary conclusion. *See Thomas*, 278 F.3d at 954. Other aspects of the

21   record also support the ALJ's determination. For example, plaintiff here argues that it is non-

22   exertional limitations related to traumatic brain injury incurred during a January 2019 auto

23   accident that preclude her ability to work. Nevertheless, in November 2021, she told Dr. Wingate

that her work at Amazon was "too physically demanding" and that she quit in November 2019 because there were no jobs "that she could physically tolerate." Tr. 891; *see* Tr. 62. This is consistent with the June 2019 opinion of examining psychologist Dr. Leslie A. Pickett, Ph.D., that "clinical testing of intellectual function did not indicate impairment," Tr. 419, and a conclusion that "[s]pecific to mental health functioning, she is currently functioning at a high level and there appears to be no reason why this level of functioning would decrease in the future, unless there was some future issue with a major health concern or loss of personal motivation to succeed," Tr. 421. Plaintiff has not presented evidence of a major health concern post-dating this June 2019 opinion that led to her functioning further decreasing. Plaintiff reported that she was first diagnosed with depression in 2012 and stated that her emotional volatility increased after the January 2019 accident. Tr. 413. Nevertheless, plaintiff also "acknowledged that she is able to maintain appropriate conduct, even when emotionally charged, and her emotional responsivity has not impaired her ability to function at her job and has not caused difficulty with her coworkers or supervisors." Tr. 414. Similarly, days after the alleged onset date in January 2020, plaintiff reported to a mental health provider that heightened mental symptoms she had experienced since the auto accident had existed for the past year "without change." Tr. 648.

Plaintiff also argues that in responsive briefing the Commissioner misconstrued statements about plaintiff's activities in the past—having part-time jobs, participating in work study opportunities, acting, and being active in the community—as exemplifying her capability to work since the alleged onset date. Dkt. 10, at 4–5. The ALJ's decision does not, however, address those issues in the same manner as the Commissioner's brief, nor does the decision equate plaintiff's capacity to work before the vehicular accident occurred with her capacity to

1  work during the relevant time period. *See* Tr. 24, 30. In a February 2021 mental health treatment

2  plan, plaintiff's therapist noted that a diagnostic reconciliation from August 2020 still applied:

3  "she is able to accomplish daily tasks, attend to self-care, complete household chores, and

4  complete her job duties at her place of employment," even if she was also "experiencing distress

5  and overwhelm following through on these tasks." Tr. 850. On that visit and throughout her

6  mental health treatment, the discharge planning included the goal of plaintiff being "gainfully

7  employed and able to complete job tasks with minimal to no distress." Tr. 853.

8      The Court finds that plaintiff has not demonstrated that the ALJ's decision to discount

9  plaintiff's testimony was unsupported by substantial evidence or marred by harmful legal error.

10     **2. Medical Opinions of Drs. Gibson and Wingate**

11     The ALJ considers the persuasiveness of medical opinions using five factors

12 (supportability, consistency, relationship with claimant, specialization, and other), but

13 supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2),

14 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds

15 a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors.

16 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain

17 how he or she considered the other remaining factors, unless the ALJ finds that two or more

18 medical opinions or prior administrative medical findings about the same issue are both equally

19 well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3),

20 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or

21 inconsistent without providing an explanation supported by substantial evidence. *Woods v.*

22 *Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

23

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 6

Plaintiff contends that the ALJ improperly discounted the conclusions in Dr. Gibson's October 2019 opinion and Dr. Wingate's November 2021 opinion. The Court finds that plaintiff has not demonstrated harmful factual or legal error in the ALJ's evaluation of the medical opinions.

### a.   Examining Psychologist Dr. Gibson's October 2019 Opinion

In October 2019, three months before the alleged onset date, psychologist Dr. Gibson examined plaintiff and concluded that plaintiff may have difficulty performing detailed and complex tasks, would have difficulty maintaining regular attendance and completing a normal workweek, and would have difficulty dealing with the usual stress encountered in the workplace. Tr. 300. The ALJ found Dr. Gibson's opinion to be unpersuasive because it was inconsistent with and unsupported by the medical evidence and with his own examination, in which plaintiff demonstrated concentration, persistence, and pace within normal limits. Tr. 33–34, 298; *see, e.g.*, Tr. 417–18, 700, 713, 778, 789, 919, 935, 1054. The ALJ found that the treatment record suggested less severe functional limitations than opined by Dr. Gibson because plaintiff was often calm, cooperative, fully oriented, appropriately dressed and groomed, made appropriate eye contact, exhibited good behavioral control, had normal thought content, had appropriate judgment and insight, and had normal perception. Tr. 33, 298; *see, e.g.*, 398, 644, 646, 649, 652, 656, 689–90, 699–700, 930, 935, 945, 996, 1013.

The ALJ cited substantial evidence for discounting Dr. Gibson's conclusions on the basis of internal and external inconsistency and lack of supportability. Moreover, the ALJ found aspects of the November 2021 opinion of reviewing psychologist Dr. Patricia Kraft, Ph.D., to be more persuasive. Tr. 33. Dr. Kraft found that although plaintiff would have occasional difficulties in maintaining concentration, pace, and persistence on detailed tasks and when

symptomatic, she remained capable of engaging in complex tasks with reasonable concentration, pace, and persistence, attending work within customary tolerances, working within a routine, and completing a normal workday and workweek. Tr. 118. Plaintiff also contends that that the mix of normal and abnormal findings in the record support Dr. Gibson's opinion. For example, in early-February 2021, plaintiff's therapist described her condition as "regressed." Tr. 846. Nevertheless, her therapist did not recommend a change in the level of care, Tr. 846, and in May 2021, noted that plaintiff was low risk and should remain at the same level of care despite concerns about poor clinical attendance and lack of engagement in therapy, Tr. 848, 854. Plaintiff's interpretation of such mixed findings could plausibly support her position. That possibility does not, however, undermine the ALJ reasonably reconciling the medical evidence in a different manner. *See Thomas*, 278 F.3d at 954.

The Court finds that the ALJ did not err as a matter of fact or law by discounting Dr. Gibson's opinion.

### b.  Examining Psychologist Dr. Wingate's November 2021 Opinion

In November 2021, examining psychologist Dr. Wingate concluded that plaintiff's prognosis for work in the future was guarded to poor; plaintiff may be able to work part-time or in a very quiet, non-distracting setting but not in a busy, demanding work setting; and she could probably work with a supervisor and a few coworkers in a quiet work setting. Tr. 895. The ALJ found Dr. Wingate's conclusions to be unpersuasive for the same reasons set forth with respect to Dr. Gibson: the conclusions were inconsistent with and unsupported by the medical evidence and Dr. Wingate's own examination. With respect to Dr. Wingate's examination, despite certain deficits, plaintiff showed full and congruent affect, normal orientation, logical and linear thought, intact memory, normal abstract thinking, an excellent fund of knowledge, good abstract thinking,

and fair judgment of hypothetical situations. Tr. 34, 892–93. With respect to the medical evidence, the ALJ cited the same medical records that the Court found to be substantial evidence for discounting Dr. Gibson's opinion. Tr. 34.

The Court finds that the ALJ did not err as a matter of fact or law by discounting Dr. Wingate's opinion. Although plaintiff's interpretation of the medical evidence is plausible, the ALJ reasonably reconciled Dr. Wingate's opinion with the record evidence.

### 3.  Lay Testimony of Ms. Smith

Plaintiff contends that the ALJ erred by finding to be unpersuasive the testimony of friend/landlord Ms. Smith for the same reasons that plaintiff's testimony was unpersuasive, i.e., they were inconsistent with and unsupported by the medical record, plaintiff's stability and relief with treatment, and plaintiff's activities of daily living. Tr. 34. The Court disagrees with plaintiff because where an ALJ has provided clear and convincing reasons for finding a claimant not fully credible, those reasons constitute germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that inconsistency with the medical evidence is a germane reason to reject lay witness testimony).

The Commissioner argues that the ALJ could not have erred because the regulations do not require an ALJ to articulate how non-medical testimony was considered. *See* 20 C.F.R. § 404.1520c(d). The Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony. *See, e.g.*, *Muntz v. Kijakazi*, 2022 WL 17484332, at *2 (9th Cir. Dec. 7, 2022); *Weitman v. Kijakazi*, 2022 WL 17175060, at *4 n.4 (9th Cir. Nov. 23, 2022); *but see Fryer v. Kijakazi*, 2022 WL 17958630, at *3 (9th Cir. Dec. 27, 2022); *Kennedy v. O'Malley*, 2024 WL 242992, at *2 (9th Cir. 2024). Despite this, other

relevant regulations indicate that an ALJ must consider evidence from nonmedical sources when evaluating a claim of disability, which includes observations made by a claimant's family, neighbors, friends, or other persons. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(1), 404.1545(a)(3). The notion that an ALJ can disregard relevant lay evidence without reason is inconsistent with the Commissioner's obligation to consider such evidence. The ALJ must provide some rationale to allow the Court to evaluate whether the decision is free of legal error and supported by substantial evidence. See, e.g., *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, Ms. Smith's lay testimony was relevant evidence the ALJ considered and rejected for the same reasons plaintiff's testimony was rejected. The Court has already found that the ALJ did not err in evaluating plaintiff's testimony. The ALJ accordingly did not err in rejecting Ms. Smith's testimony for the same reasons. *Valentine*, 574 F.3d at 694. The Court finds that the ALJ did not err as a matter of fact or law by discounting Ms. Smith's lay testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 5th day of June, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10